and we will start with 23-5062 United States v. Riggs. Good morning, excuse me, good morning, and may it please the court, Nicholas Hart for Appellate Gary Riggs. Mr. Riggs challenges his convictions following a jury trial for four counts of aggravated child sexual abuse for three reasons. First, that the district court abused its discretion in allowing six uncharged acts of child molestation under Rule 414 to be presented to the jury. Second, that the district court abused its discretion in allowing an expert in forensic interviews of child victims to testify in a manner that bolstered the alleged victim SB's testimony. And three, that the district court abused its discretion by allowing a sane sexual assault nurse examiner expert to testify when there was no issue related to any sane examination in this case. To start with the Rule 414 evidence, here the district court allowed six uncharged acts of alleged child molestation of SB to be presented to the jury. Each of those acts, other than one of them were alleged to have occurred in the same location, around the same time frame, and under similar circumstances with one of them occurring in Texas. These six acts, which took the acts before the jury from four to ten acts, resulted in unfair prejudice and were more prejudicial than probative. The probative value... Were they more prejudicial than the charged acts? I do believe that they are, Your Honor, because we're going... The government's argument is that the four charged acts are more severe than the uncharged acts, so that reduces the prejudice. But by adding six separate acts and now putting before the jury ten acts of child abuse instead of just four, that does lead to unfair prejudice because the jury is now confronted with ten instances where the allegations are that Mr. Riggs abused SB. So it's the quantity. Well, is that really the test, the quantity? Or is it the, I guess, the quality? I mean, you've got in the charged acts some more detail, and you have actual penetration. So couldn't we look at it and say, well, the jury already heard such graphic evidence with respect to the charged acts that this didn't really impact much? I think that three of the six acts which were discussed in more detail that the government agrees with me are 414 acts. Two of those didn't involve digital penetration. And one of them involved penetration in a vehicle while going home that related to some of the charged conduct itself. So I do think that these acts, there are certainly some where there is less detail and less serious conduct, but there's also some that do have equally serious conduct as some of the charged acts. I think also this, the fact that there was, that SB was unable to discuss all of the detail, the memory issues, and additionally, you know, the statements, the vagueness of these statements does lower the probative value of the 414 evidence that was submitted to the jury. And instead, what the jury walks away from with this is exactly what SB testified, which was this happened so many times, I can't even place everything. But it also verifies the expert testimony that it's very difficult for children to deal with this particularly. It does verify testimony, which is why we're not challenging this at the relevancy prong, just at the 403 balancing prong. No, I mean in analysis with prejudice versus probative value. I think that that relevance is reduced by the four other witnesses that testified that also give confirming information related to SB's allegations, and that's the friend, the mother, the father, and the grandmother. Well, none of them were there. There were only two people there any time these acts occurred. That's correct, but this is, there are four witnesses who were able to corroborate that she was at least present on these days or that they were together on those days, and that is evidence that bolsters that testimony and is relevant, I think, reduces the probative value of the uncharged acts. So ultimately, aren't you walking yourself into a harmless error situation where you have four people corroborating surrounding circumstances? You have four instances where strong testimony was given by the victim. You have certain admissions by the defendant, and so these extra six vague and sort of unspecified instances just really didn't end up meaning that much in light of the strong evidence. I do think that we could say, given all the evidence, that it is harmless, especially when we consider the quantity of the acts, and that's the main quantity argument that's here, is that having these six uncharged acts and creating ten acts that the jury had to individually consider and unanimously agree upon. So did you try the case below? Yes. Okay. As part of your closing argument, did you try to exploit the idea that the six uncharged acts were vague and she didn't really remember anything about them and couldn't specify anything about them? We tried to do that for all ten of the acts. All right. And really, the attack on the 414 and the underlying conduct was essentially the same, which is, you know, there was, because this is a McGirt case, I mean, there were years of statements that are very inconsistent. But, of course, we're not here just arguing credibility of SB. And this is an abusive discretion review for us, right? Yes. All three of the issues that we raise, Your Honor, are an abusive discretion review, as all three are evidentiary issues. To move to the second issue, which is the admission of the expert testimony of the child's forensic interviewer, Mr. Riggs agrees that, generally speaking, testimony from forensic interviewers about general characteristics of a class, this court has said, is admissible. But this testimony, instead of just talking generally about the fact that a jury needs to set aside its biases and that there is no, there's truly no indicative behavior of abuse or reporting because every person is different, went further than that. And was specifically tailored towards each of the issues that were related to SB's testimony by talking about that inconsistent statements are common, that delayed reporting when an abuser is a family member is common, about the memory issues, the inability to distinguish between the acts, that mental health influences, such as those suffered by SB. So what, I mean, what could the expert have talked about that would have been relevant other than those things? Because the whole, the whole plan of attack here was those things. So how could, how could there be, you say you don't dispute that the expert could testify generally, but I mean, how, what are they going to do? Talk about a bunch of stuff that's not at issue? I think that in this category of testimony, the way that I've seen it done that I think is proper is where experts come in and say, we all as a society have these biases for how victims should act. That is not true. No two are the same. You know, everything, you know, we need to set aside those biases and understand that everyone reports different and reacts different and does things differently. You need to judge, you know, and then the lawyers, the prosecutors stand up and argue, you judge the credibility based on the witness's testimony. Did you cross examine the expert based on, and ask some questions that would have elicited things that you thought would be favorable to your position? We did, Your Honor, after. Well, we did not, the statements continue to be, you know, vague and tailored back towards what SB experienced, right? Because it was just directly related to this testimony, trying to undo something with that, the challenge. I don't know how you can say that the expert's testimony was directly related to the victim's testimony here, because Ms. Blevins said that she had not interviewed SV, and she did not know anything about SV's interview. So she specifically told the jury, I'm not talking about this particular victim of child sexual assault, I am telling you generally about what patterns we can see among child victims of sexual assault. And she then went on to testify based on the government's questions, only about the issues with reporting that were before the jury. Well, she didn't limit it to only the issues that were relevant here. She also testified about accidental disclosures. She testified about preschool-age children's ability to answer questions. She talked about how a child may react if they have a previous experience. I mean, those weren't relevant here, and yet her testimony went well beyond. It did happen that some of the things that she said generally occur also occurred here. But that doesn't seem surprising when you've got SV as within the group of people she's talking about. I do think that some of those, Your Honor, are still related here, especially the previous incidents, because it's happening over a course of several years. Well, but it's a previous experience with child welfare or law enforcement. And this was the first time, despite as the evidence came out, that we had an ongoing sexual assault, various over time, that it wasn't until very late in the day that law enforcement or child welfare got involved. Yes, I understand what you're saying, Your Honor. I mean, we do have—I think that the overall and the large majority of the testimony does have this targeted nature to it. If I may just briefly cover the last area, Your Honor, with my remaining time. As for the SANE expert, this discussion, we think, is also an abuse of discretion because this is not actually an absence of evidence case. Did you ever bring it up? Did you ever suggest there's no forensic evidence that this occurred? They have no lab results. They—no rape kit, no this, no that? We did not, Your Honor. Okay. So the issue in the case was really about whether Espy was telling the truth and not so much about the forensic investigation. There were issues related to the interview of Mr. Riggs. In United States v. Dalton, I mean, we said that where there's an absence, a lack of evidence, that you can have someone testify to explain that. And it's to deal with what people refer to as the CSI impact on juries where they seem to question why they're not being told about physical evidence because they have an understanding that, you know, in 30 minutes you can have it solved with all the fancy science. How is this different? I think Dalton is distinguishable here because there were instances where the investigation actually searched for DNA evidence but wasn't able to find it. And the experts were able to come in and say how in investigations it's common that these forensic investigations don't uncover any forensic evidence. That's not what we have here. We don't have an instance of the examination happening or anyone seeking an examination. We already had the investigator saying why there was no examination in this case and it was not an issue whatsoever. So all this did was put before the jury evidence that had absolutely nothing to do with the case. So where's the harm? I mean, the jury hears it. So what? There's no, it's not an issue. They're smart enough to recognize it's not an issue. The government wasted everybody's time by putting on this witness? If I may answer, Your Honor. Yes. So first, the government actually didn't raise the harmless error argument as to the two expert issues. And I think that's because, and all I can do is obviously speculate, but I think that's because expert testimony, even though the jury is instructed that they don't have to follow it or credit it, does receive different type of deference from a jury when you have these well-credentialed experts coming in and talking about these issues. Don't we have the authority to sua sponte, consider harmless error under our case law and under the federal rule? Absolutely. And yes.  Thank you. Thank you. Good morning. May it please the Court, Lina Alam for the United States. This court has repeatedly recognized that in the context of sexual abuse and child molestation, consistent with congressional intent, courts are to liberally admit evidence of prior sexual misconduct for any purpose, including to prove a defendant's propensity. Here, the either three or six episodes of uncharged sexual misconduct against the victim of the four charged offenses did not, was more probative than prejudicial and supported the jury's verdict in this case. The district court did not abuse its discretion in allowing those, again, three or six episodes. I think I'd say six. I don't think it matters, Your Honor. I think the three that the government argues did not really come in as episodes of child molestation because the victim was unable to give details about them are obviously less prejudicial than the ones where the victim described the child molestation. So you would agree that they're less probative, too, right? Not really, Your Honor, because one of the purposes for admitting her testimony about the course of conduct and the number of times it happened and the fact that there were so many incidents and she didn't remember them all was actually probative of why her testimony on the charged offenses could have been less clear or why her memory of where things happened or the details of each individual incident had deteriorated because there were so many incidents she almost couldn't keep track. And so her failure of memory on the uncharged incidents was actually part of the probative value of her testimony about those incidents. Okay, so I thought I understood from your brief that part of your argument was, look, her memory on these things weren't very good. She didn't really have any details. So the jury didn't even really get that much from them. So ergo, they weren't prejudicial. But now we have another theory on why they were really probative, so maybe they were prejudicial. Well, they're actually both. So just as the defendant is in the unusual position of arguing that there was less prejudicial evidence to corroborate S.B.'s testimony, but that evidence also goes to whether the error was harmless. We're in the unusual position of saying this evidence wasn't particularly prejudicial because her memory wasn't great. It also was probative to the extent that it helped explain the course of her testimony in general. It seems to me the thin nature of the testimony could be particularly problematic for you, and for this reason. It's because it suggests that the purpose of the evidence and that the effect of the evidence was just a pile on numbers of times that this happened, and that you weren't really trying to get, you didn't really have great evidence that it was the same conduct. It was similar conduct, and this Court's cases have pretty consistently affirmed admission of this kind of evidence, and in much more significant ways. In the Peralt case, only one victim was charged seven episodes. Seven other victims gave 414 testimony, and the one charged victim testified as to hundreds of episodes of sexual misconduct by the defendant against that one victim. In that case, this Court affirmed. In Benally, the victim was a child who testified about an attempted rape, and the Court admitted four different episodes of forcible rape from victims ranging from age 10 to age 20, many of them years and years before, and under the Rule 403 analysis, this Court affirmed as well. All of these cases are premised on the general sense that congressional intent is that these kinds of prior abuses, even when there are small differences or even when there is a large lapse in time or a number of different episodes, are not so prejudicial that they should not be admitted. Yeah, I guess my point is that if your evidence is not particularly probative of the ultimate fact of did you do it or not, maybe not the memory issues, but your witness has a lot of memory problems and a lack of detail about these things, but you still continue to bring in six additional occasions that the purpose of that is just to pile on and to say it happens all the time. I can't tell you exactly what was happening all the time, but it happened all the time. And it seems to me that that's problematic for you. It's not, particularly in this case, because the District Court gave an instruction that specifically cautioned the jury and required them to first make a threshold determination whether they believe those other episodes occurred before they gave them any weight. And so to the extent that that could have been prejudicial, that prejudice was limited by the specific instruction that the District Court gave in this case. Moving on very briefly to the second point in Appellant's brief, it sounds to me that the argument is that the government or the witness somehow caused the District Court's abuse of discretion by narrowly tailoring the questions asked of Ms. Levins to relevant evidence. And that is simply not what PARSON stands for. PARSON suggests that evidence by a forensic interviewer about the process of child abuse disclosure is admissible and does not somehow bolster or vouch for the witness's testimony, particularly whereas here the expert had no opportunity to interview the victim and did not know what the victim's testimony was, but was asked questions by the prosecutor that were tailored to the subjects that were likely to come up in this case. That is not an abuse of discretion. And I think the argument is that it becomes vouching because the expert either just intuitively knew or was told that these are the weaknesses in the victim's testimony, vague memory, confusion on dates, and didn't report it for years. And then the expert went right to those subjects' matters to, I think this is the argument, to disabuse the jury of any concerns about weaknesses in the victim's testimony. Well, certainly the questions were tailored by the prosecution to ask about the areas of concern as to the victim's testimony. I don't think it was a coincidence that the expert testified that victims of child sex abuse sometimes have failures of memory or make tentative disclosures or that the time lapse can change things over time. But that it wasn't a coincidence doesn't mean there was some collusion. That means those are very frequent issues in child sex abuse disclosures and that the government only chose to ask questions about the things that made sense in this case did not create an abuse of discretion on the part of the district court. Thank you. If there are no other questions, I would cede the rest. Do you want to talk about Ms. Bell? Just briefly, Your Honor. I want to explain why appellant's attempt to distinguish Dalton is mistaken. In Dalton and in the other cases cited, in general, those experts were permitted to testify about the absence of evidence where tests were done. And here, obviously, the test wasn't done. But part of Ms. Bell's testimony was specifically about why the test wasn't done. Both because it wouldn't have been expected to find evidence for the physical reasons that she described, but also because of the level of trauma that would be caused by this particular kind of testing. Unlike testing a gun for fingerprints or DNA. There was harm to be done by doing the test in the first place. And so to the extent that the jury wanted to know why the government hadn't gone ahead and done the test at all, Ms. Bell's testimony was designed to address those concerns. Did you have any belief that the jury wanted to know? Had it been brought up in opening statements that they're not even going to present you with any evidence? I don't believe that had been brought up. However, in all of these cases, particularly where the government chooses to put on a panoply of experts about evidence that doesn't exist, it's designed to deal with the potential concerns that are raised from a jury pool that's been raised on CSI. I mean, aren't those usually cases where one would expect to see forensic evidence, but the government for some reason doesn't have any? I think the question your question raises is, who is one in this case? And because jurors are typically not familiar with the forensics of child sex abuse, they may well have expected there to be some kind of physical evidence of the rapes of a 13 or 14 year old that were described here. What was the most recent charged occurrence before trial? It was the digital penetration in December of 2014. And the trial took place in May of 2022. So, I mean, OK. Of course, that was because of McGird. So the original state trial, I think, took place in 2015 or 2016. And the forensic exam, the report of the child sex abuse took place in May of 2015. And so even then, it would have been a good five or six months from the last alleged digital penetration. If there are no other questions, I would see the rest of my time. Thank you. Thank you. And ask the court to affirm. Thank you. We will take this matter under advisement. Thank you for your attention.